CLERK
US DISTRICT & BANKRUPTCY
COURTS FOR DC
2021 MAY 28  P 1: 33

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE ADMINISTRATIVE SUBPOENA NO. 690538 TO GANNETT SATELLITE INFORMATION NETWORK, LLC | Case: 1:21-mc-00064<br>Assigned To : Boasberg, James E.<br>Assign. Date : 5/28/2021<br>Description: Misc. |

### GANNETT SATELLITE INFORMATION NETWORK, LLC'S MOTION TO QUASH AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Gannett Satellite Information Network, LLC ("Gannett"), publisher of *USA TODAY*, pursuant to 18 U.S.C. § 3486(a)(5), hereby moves to quash Administrative Subpoena No. 690538 (the "Subpoena"), which the Federal Bureau of Investigation ("FBI") issued to Gannett on April 29, 2021. The Subpoena violates the First Amendment to the U.S. Constitution by demanding records that would identify particular persons who read a particular *USA TODAY* news report. Moreover, in making this unconstitutional demand, the FBI has failed to demonstrate compliance with the United States Attorney General's regulations for subpoenas to the press – regulations that President Biden himself recently pledged the Administration would follow. The Court should grant this motion and quash the Subpoena.

### BACKGROUND

On February 2, 2021, *USA TODAY* published a news report titled *FBI identifies 2 agents killed in Florida while serving warrant in crimes against children case* (the "News Report"), which is available online at https://www.usatoday.com/story/news/nation/2021/02/02/sunrise-florida-shooting-fbi-agents-injured/4352344001/. For the Court's convenience, a copy of the News Report is also attached hereto as Exhibit A. *USA TODAY* published the News Report at 9:29 AM on February 2, and updated the News Report at 6:23 PM that same day. *See* Ex. A at 1.



RECEIVED
Mail Room
MAY 28 2021
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

On April 29, 2021, the FBI sent the Subpoena to Gannett Co., Inc., the ultimate parent company of Gannett Satellite Information Network, LLC. The FBI did not communicate with Gannett, as the Department of Justice regulations require, in advance of sending the Subpoena. In fact, the FBI faxed the Subpoena to an office that has been closed during the COVID-19 pandemic. A copy of the Subpoena is attached hereto as Exhibit B.

The Subpoena, which was issued pursuant to 18 U.S.C. § 3486, demands that Gannett produce records of Internet Protocol ("IP") addresses and other potentially identifying information "for computers or other electronic devices" that accessed the News Report between 8:03 PM and 8:38 PM on February 2, 2021. *See* Ex. B at 5.[1] The Subpoena states that these records "relate[] to a federal criminal investigation being conducted by the FBI" and that Gannett "is required to furnish" them. *Id.* at 2. The Subpoena sets a deadline for production of May 29, 2021 – the Saturday of a holiday weekend – and it further "request[s]" Gannett "not to disclose the existence of this subpoena indefinitely." *Id.*

---

[1] Specifically, the Subpoena calls for Gannett to produce:

> IP addresses, and associated dates, times, time zones, user agent strings, communication ports, telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"), for computers or other electronic devices that accessed the following URL: https://www.usatoday.com/story/news/nation/2021/02/02/sunrise-florida-shooting-fbi-agents-injured/4352344001/ between 2/3/2021 00:03 UTC – 2/3/2021 00:38 UTC.

*See* Ex. B at 5.

On May 22, 2021, undersigned counsel responded to the Subpoena on Gannett's behalf. A copy of Gannett's response letter is attached hereto as Exhibit C. Gannett objected to disclosing the subpoenaed records on two grounds. First, the FBI failed to comply with Department of Justice regulations for subpoenas to the news media. *See* Ex. C. at 1-2. Second, the Subpoena violates the First Amendment by compelling *USA TODAY* to disclose the identities of its readers. *See id.* at 3. Gannett therefore asked the FBI to withdraw the Subpoena by May 25, 2021. *Id.*

On May 25, the FBI confirmed to Gannett that the agency had received Gannett's response and had forwarded it to the Department of Justice counsel handling the matter. The FBI and the Department of Justice have not communicated with Gannett regarding the Subpoena since then.

The statute authorizing this Subpoena states that "[a]t any time before the return date specified in the [subpoena], the person or entity summoned may . . . petition for an order modifying or setting aside the [subpoena]." 18 U.S.C. § 3486(a)(5). Gannett, which regularly does business in this District,[2] now timely moves to quash the Subpoena as unconstitutional.

## ARGUMENT

The statute authorizing this Subpoena provides that "[a] summons issued under this section shall not require the production of anything that would be protected from production under the standards applicable to a subpoena duces tecum issued by a court of the United States." *Id.* § 3486(a)(7). This Subpoena fails to comply with those ordinary standards by demanding that a news organization produce records squarely within the protections of the First Amendment. It also has not demonstrated compliance with the Department of Justice's regulations for such subpoenas.

---

[2] 18 U.S.C. § 3486(a)(5) further provides that the recipient of an administrative subpoena may move to quash it "in the United States district court for the district in which that person or entity does business or resides."

## I. The Court Should Quash The Subpoena As Unconstitutional.

A government demand for records that would identify specific individuals who read specific expressive materials, like the Subpoena at issue here, invades the First Amendment rights of both publisher and reader, and must be quashed accordingly. As U.S. Supreme Court Justice William O. Douglas wrote more than 50 years ago, at the height of the Red Scare:

> A requirement that a publisher disclose the identity of those who buy his books, pamphlets, or papers is indeed the beginning of surveillance of the press. . . . The finger of government leveled against the press is ominous. Once the government can demand of a publisher the names of the purchasers of his publications, the free press as we know it disappears. Then the spectre of a government agent will look over the shoulder of everyone who reads. The purchase of a book or pamphlet today may result in a subpoena tomorrow. . . . The press and its readers will pay a heavy price in harassment. But that will be minor in comparison with the menace of the shadow which government will cast over literature that does not follow the dominant party line. If the lady from Toledo can be required to disclose what she read yesterday and what she will read tomorrow, fear will take the place of freedom in the libraries, book stores, and homes of the land. Through the harassment of hearings, investigations, reports, and subpoenas government will hold a club over speech and over the press. Congress could not do this by law. The power of investigation is also limited.

*United States v. Rumely*, 345 U.S. 41, 57-58 (1953) (Douglas, J., concurring).

Courts, including in this District, have long and consistently applied these powerful First Amendment principles to demands for information such as the Subpoena at issue here. In *In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*, the Government moved to compel "Company X" to comply with grand jury subpoenas seeking, *inter alia*, "records that show the identity of all movies sold or distributed, including the date of each transaction, payment received, and method and date of each of each shipment, from customer purchases" from a particular website over a given timeframe. 706 F. Supp. 2d 11, 13 (D.D.C. 2009) (Lamberth, J.). Company X refused to identify the customers, and the Court concluded that "[u]ntil the United

States proves otherwise, the expressive materials being investigated are presumptively protected by the First Amendment and Company X's customers have a correlative right to receive that information anonymously." *Id.* at 17. As the Court explained, citing Justice Douglas's concurrence, "if the subpoenaed customer records are given to the Government, it could have a chilling effect on the exercise of Company X's customers' First Amendment rights." *Id.* at 17-18. The Court therefore stated that "the United States may only obtain the records if it demonstrates a compelling need for them and a sufficient nexus between the records and the grand jury's investigation, or if it shows that they are not entitled to the protection of the First Amendment." *Id.* at 18. The court subsequently concluded that the Government failed to carry that burden, and it denied the Government's motion to compel release of those records. *Id.* at 19-23.

A decade earlier, in *In re Grand Jury Subpoena to Kramerbooks & Afterwords, Inc.*, Independent Counsel Ken Starr issued a subpoena to the Washington, D.C. bookstore Kramerbooks & Afterwords for "all documents and things referring or relating to any purchase by Monica Lewinsky from November 1995 to the present." 26 Med. L. Rptr. 1599, at *1 (D.D.C. Apr. 6, 1998) (Johnson, C.J.).[3] The bookstore moved to quash, and the Court found "that the First Amendment is indeed implicated" by the subpoena, observing that "[t]he First Amendment right to receive ideas 'follows ineluctably from the sender's . . . right to send them' and is also 'a necessary predicate to the recipient's meaningful exercise of his own rights of speech, press, and political freedom.'" *Id.* (quoting *Bd. of Educ. v. Pico*, 457 U.S. 853, 867 (1982)). The Court concluded that, in the face of these First Amendment protections, the subpoena was invalid unless

---

[3] A copy of this decision is attached hereto as Exhibit D for the Court's convenience.

"the Office of Independent Counsel has a compelling need for the materials it seeks and . . . there is a sufficient connection between that information and the grand jury's investigation." *Id.* at *3.[4]

Courts elsewhere have reached the same results. In *Lubin v. Agora, Inc.*, for example, the Maryland Court of Appeals quashed a subpoena that the state's Securities Commissioner had issued to a newsletter publisher, demanding the production of "subscriber lists, marketing lists, and other documents containing information identifying any of its subscribers." 882 A.2d 833, 836 (Md. 2005). As the Court explained, "the subpoenas seek information within the protective umbrella of the First Amendment. Enforcement of the subpoenas would intrude upon the First Amendment rights of [the publisher's] subscribers and customers because disclosure of their subscriber status and purchase of the Report would destroy the anonymity that the Supreme Court has recognized as important to the unfettered exercise of First Amendment freedoms." *Id.* at 846. The Court therefore held that the subpoena was invalid unless the Government could "establish a substantial relation between the information sought and an overriding and compelling State interest," and it concluded that the Commissioner had not satisfied that standard. *Id.* at 846-47.[5]

These First Amendment concerns apply here with equal force. The Subpoena's demand for identifying information about the particular individuals who read the *USA TODAY* News

---

[4] Ms. Lewinsky later agreed to produce responsive records, which mooted the subpoena. *See, e.g.,* Larry Margasak, *Starr To Get Lewinsky Book Records*, Associated Press (June 23, 1998).

[5] *See also, e.g., In re Grand Jury Subpoena (Amazon.com)*, 246 F.R.D. 570, 572-73 (W.D. Wis. 2007) ("The subpoena is troubling because it permits the government to peek into the reading habits of specific individuals without their prior knowledge or permission. . . . [I]t is an unsettling and un-American scenario to envision federal agents nosing through the reading lists of law-abiding citizens while hunting for evidence against somebody else."); *Tattered Cover v. City of Thornton*, 44 P.3d 1044, 1053 (Colo. 2002) ("[T]he First Amendment embraces the individual's right to purchase and read whatever books she wishes to, without fear that the government will take steps to discover which books she buys, reads, or intends to read. A governmental search warrant directed to a bookstore that authorizes seizure of records that reflect a customer's purchases necessarily intrudes into areas protected by this right.").

Report at a certain time creates precisely the type of chilling effect that Justice Douglas warned of more than half a century ago. Under the demanding First Amendment test set out in the cases discussed above, the FBI's threadbare assertion that "the information sought through this subpoena relates to a federal criminal investigation," *see* Ex. B at 2, cannot possibly justify such an abridgment of free speech. The Court should therefore grant this motion and quash this Subpoena as unconstitutional.

**II.     The FBI Has Ignored Its Own Guidelines In Issuing The Subpoena.**

On top of the Subpoena's constitutional infirmities, the FBI has not demonstrated its compliance with the United States Attorney General's own regulations for issuing subpoenas to the press. While these regulations create no "enforceable right," *see In re Grand Jury Subpoena (Miller)*, 438 F.3d 1141, 1152 (D.C. Cir. 2005), the Department of Justice recently asserted that it "follows the established procedures within its media guidelines policy when seeking legal process to obtain" press records, *see* Luciana Lopez, *Washington Post: Trump Justice Department got reporters' phone records*, USA TODAY (May 7, 2021), https://www.usatoday.com/story/news/politics/2021/05/07/washington-post-trump-doj-got-reporters-phone-records/4997276001/. Indeed, just last week, with news that the previous Administration had subpoenaed a CNN journalist's email and telephone records, President Biden himself called law enforcement demands for press records "simply wrong." *See* Matt Zapotosky & Anne Gearan, *Biden says he won't allow Justice Dept. to seize journalists' phone, email records*, The Washington Post (May 21, 2021), https://www.washingtonpost.com/national-security/biden-journalists-justice-department/2021/05/21/fb606c4a-ba72-11eb-a5fe-bb49dc89a248_story.html; Charlie Savage, *White House Seems to Affirm Biden's Vow to Bar Seizures of Reporters' Phone Data*, The New York Times (May 24, 2021), https://www.nytimes.com/2021/05/24/us/politics/biden-reporter-

data-seizures.html (White House Press Secretary Jen Psaki "said the administration intended 'to use the Holder model as their model'").

By "the Holder model," Ms. Psaki plainly meant the 2014 and 2015 revisions, made during the tenure of Attorney General Eric Holder, to the Department of Justice's regulations limiting the authority to subpoena journalists or news organizations. Codified at 28 C.F.R. § 50.10, these regulations provide, among other important protections for the press, that no process to compel the disclosure of a journalists' information may initiate without the approval of the Attorney General, see id. § 50.10(c)(1); that the records sought under the subpoena must be "essential to a successful investigation or prosecution," and thus the subpoena may not seek "peripheral, nonessential, cumulative or speculative information," see id. § 50.10(c)(4)(ii)(A); that the Government must "have made all reasonable efforts to obtain the information from alternative, non-media sources," see id. § 50.10(c)(4)(iii); that before issuing a subpoena, the Government "should have pursued negotiations with the affected member of the news media" unless the Attorney General found "compelling reasons" involving a "clear and substantial threat to the integrity with the investigation, risk grave harm to national security, or present an imminent risk of death or serious bodily harm," see id. § 50.10(c)(4)(iv)(A); and that "the proposed subpoena generally should be limited to the verification of published information and to such surrounding circumstances as relate to the accuracy of the published information," see id. § 50.10(c)(4)(v).

The FBI has not, on this record, followed these straightforward procedures before issuing the Subpoena to Gannett. Indeed, as noted above, the FBI's failure to even communicate with Gannett in advance led the agency to send the Subpoena to a closed office. The Subpoena therefore is not authorized under federal regulations, in addition to being unconstitutional.

## CONCLUSION

For the foregoing reasons, Gannett respectfully requests that the Court quash the Subpoena and grant such other and further relief as deemed just and proper.

Dated: May 28, 2021              Respectfully submitted,

                                                    BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Gannett Satellite Information Network, LLC*